**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **L. H. b/n/f CHARLES and VANESSA HESSEL Plaintiff,** | § § § § | |
| **v.** | § | **C.A. No. 4:26-cv-9637** |
| **HOUSTON INDEPENDENT SCHOOL DISTRICT and CIERRA MATHIS, Individually Defendants.** | § § § § § § | |

**PLAINTIFFS ORIGINAL COMPLAINT**

NOW COMES L.H. ("the Student") by and through his next friends and natural parents Vanessa and Charles Hessel and files this their *Original Complaint* alleging Houston Independent School District, School Board and Staff, (hereinafter referred to as "HISD" or "the School District") and Cierra Mathis, a Former Teacher and in her *Individual Capacity* violated the various rights of the Student all as more specifically pled herein. Plaintiffs reserve the right to replead if new claims and issues arise upon further development of the facts, as permitted by law. In support, thereof Plaintiffs would respectfully show this tribunal the following:

## I. BRIEF INTRODUCTION TO THE CASE

1. L.H. is child with Down Syndrome and has minimal self-help skills. Additionally, L.H. has related communication and behavioral deficits with a need for very close supervision. Accordingly and during all times relevant to this cause, he was placed by the School District in what is called a self-contained classroom with other children with similar needs. This type of environment requires two things; experienced and trained staff and a sufficient number of both so that the children can be kept safe. Unfortunately, in the summer of 2023 the

School District failed to provided L.H. a classroom with a sufficient number of experienced and trained staff to keep him safe. It should come as no surprise that L.H. started to come home with injuries. On one occasion he came home with significant injuries and his parents contacted staff. later a v video was reviewed, that showed L.H. being abused by his teacher, Cierra Mathis. Due to a litany of acts and omissions by the School District, Mathis and others L.H. by and through his natural parents file this *Original Complaint.* Here they allege his civil rights pursuant to the 4th Amendment to the Unites States Constitution, to be free from unnecessary and excessive force was violated by Mathis. Additionally, his parents allege their son's right to *Due Process* and *Equal Protection,* both pursuant to 14th Amendment of the Constitution of the United States were likewise violated by the School Board. Last, L.H. was a victim of discrimination based upon disability, as contemplated by both Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 ("Section 504") and the Americans With Disabilities Act, 42 U.S.C. §12131, et seq. ("ADA").

## II. JURISDICTION

2. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C.A. §1331 and 1343 because the matters in controversy arise under the constitution and laws of the United States.

## III. VENUE

3. Under 28 U.S.C. §1391, venue is proper before this Court because the events and omissions giving rise to the Plaintiffs' claims occurred in the Southern District of Texas, Houston Division.

## IV. PARTIES

4. L.H. shares time living with each of his parents, Vanessa and Charles Hessel in Houston,

Texas. At all times pertinent to this case, L.H. resided in Houston Independent School District catchment area.

5. The Houston Independent School District is organized under the laws of the State of Texas. They may be served by and through the Honorable F. Mike Miles, Superintendent at 4400 West 18th St., Houston, TX 77092-8501; (713) 556-6000 [Telephone]. It is expected that appointed counsel will receive and waive service.

6. Cierra Mathis is sued in her Individual Capacity. She is a former employee of the Houston Independent School District and is responsible for the acts and omissions noted herein. Her current address is unknown, As such, she too will first be served by and through the Honorable F. Mike Miles, Superintendent at 4400 West 18th St., Houston, TX 77092-8501; (713) 556-6000 [Telephone] and It is expected that counsel will be appointed to receive and waive service for her, or as later determined otherwise.

## V. <u>FACTUAL RESUME</u>

A. ABOUT THE HOUSTON INDEPENDENT SCHOOL DISTRICT

7. The Houston Independent School District (HISD) is the largest public school district in Texas, and the eighth largest in the United States. It serves over 200,000 students across more than 280 schools. HISD is governed by a Board of Trustees and subject to state and federal education laws. HISD is responsible for ensuring compliance with various constitutional and statutory requirements, including those mandated by the United States Department of Education, the State of Texas, Texas Education Agency (“TEA”). The District's obligations include providing equitable access to educational opportunities, maintaining financial transparency, and adhering to standards for academic performance and

student safety. Any failure to meet these requirements could result in legal challenges, potential sanctions, and mandated corrective actions to ensure that HISD fulfills its legal and educational responsibilities to its students and the community.

B. THE HOUSTON ISD SCHOOL BOARD HAS DEVELOPED POLICIES & PROCEDURES TO PROTECT THE DISABLED

8. The School Board has developed policies and procedures regarding discrimination based upon disability. They are based upon and taken from commentary found in the Federal Register when the rules and regulations related to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 were promulgated; *see also* 34 C.F.R. §104.36. Moreover the United States Department of Education ("DOE") promulgated a number of professional directives on bullying and harassment of students with disabilities, and related to providing accommodations to students with disabilities, from their own *Offices of Civil Rights* ("OCR"). Many have found there way into the Texas Education Code, Title 2 (Public Education), Subtitle G (Safe Schools); Chapter 37 (Discipline); Subchapter A (Alternative Settings For Behavior Management) and Subtitle E (Students and Parents); Chapter 26 (Parental Rights & Responsibilities). They are also enunciated in the Texas Family Code, Title 5 (the Parent-Child Relationship); Subtitle B (Suits Affecting The Parent-Child Relationship); Chapter 151 (Rights And Duties In Parent Child Relationship).

9. The School Board has also promulgated policies and procedures regarding the reporting of child abuse. In Texas a School District Official has a non-delegable duty to report the abuse of a minor, especially one with a disability, when there is mere 'reasonable cause to believe' it has occurred, within 48 hours of receipt of such information. Texas Family Code §261.101(b). In fact, if a professional does not report the purported abuse in the time period

proscribed by law, it may be considered a Class A Misdemeanor.

10. Taken together these federal law and state law, rules professional directives and now found in the Houston Independent School Board Policies & Procedures noted below, act together as ”Parent & Student Rights” with both significant substantive and procedural protections. For example, EHBA (LEGAL) - Special Programs: Special Education specifies that students with disabilities will not be discriminated against based upon their disability. In addition, FB (LOCAL) - Equal Educational Opportunity, specifies that a report of discrimination or harassment based on a student's disability shall be made in accordance with FFH. Also, the District designated and authorized the ADA/Section 504 coordinator for students (the Superintendent) to coordinate its efforts to comply with Title II of the Americans with Disabilities Act of 1990, as amended, which incorporates and expands upon the requirements of Section 504 of the Rehabilitation Act of 1973. Additionally, if the District has reason to believe that a student has a disability that may require additional services and supports in order for the student to receive an appropriate education as this term is defined by law, Section 504 and/or the Individuals with Disabilities Education Act (IDEA) shall govern the evaluation, services, and supports provided by the District.

11. Finally, FFH (LOCAL) Student Welfare: Freedom from Discrimination, Harassment, and Retaliation states that reports of discrimination based on disability may be directed to the designated ADA/Section 504 coordinator for students.

> “The District official or designee shall promptly notify the parents of any student alleged to have experienced prohibited conduct by a District employee or another adult. The District may request, but shall not require, a written report. If a report is made orally, the District official shall reduce the report to written form. Upon receipt or notice of a report, the District official shall determine whether the allegations, if proved, would constitute prohibited conduct as defined by this policy. If so, the

District shall immediately undertake an investigation, except as provided below at Criminal Investigation. If the District official determines that the allegations, if proved, would not constitute prohibited conduct as defined by this policy, the District official shall refer the complaint for consideration under FFI. If appropriate and regardless of whether a criminal or regulatory investigation regarding the alleged conduct is pending, the District shall promptly take interim action calculated to address prohibited conduct or bullying prior to the completion of the District's investigation. If appropriate and regardless of whether a criminal or regulatory investigation regarding the alleged conduct is pending, the District shall promptly take interim action calculated to address prohibited conduct or bullying prior to the completion of the District's investigation. he investigation may be conducted by the District official or a designee, such as the principal, or by a third party designated by the District, such as an attorney. When appropriate, the principal shall be involved in or informed of the investigation. Absent extenuating circumstances, such as a request by a law enforcement or regulatory agency for the District to delay its investigation, the investigation should be completed within ten District business days from the date of the report; however, the investigator shall take additional time if necessary to complete a thorough investigation. The investigator shall prepare a written report of the investigation. The report shall include a determination of whether prohibited conduct or bullying occurred. The report shall be filed with the District official overseeing the investigation. If the results of an investigation indicate that prohibited conduct occurred, the District shall promptly respond by taking appropriate disciplinary action in accordance with the Student Code of Conduct and may take corrective action reasonably calculated to address the conduct. A student or parent who is dissatisfied with the outcome of the investigation may appeal through FNG(LOCAL), beginning at the appropriate level. A student or parent has the right to file a complaint with the United States Department of Education Office for Civil Rights."

12. Taken together, this amalgam of law, rule, regulations, professional guidelines and School Board Policies and Procedures create and number of procedural and substantive "Student & Parental Rights."

C. ABOUT L.H.

13. L.H. was born in February of 2014. He is currently 12 years old. During the 2022-2023 School Year he attended the Mandarin Immersion Magnet School within the Houston ISD. He has Down Syndrome with significant cognitive impairments. Additionally his communication skills are quite primitive. Moreover, he has limited self-help skills, is unable

to toilet on his own, wears diapers at school, needs help with hygiene and requires constant supervision. Accordingly he receives Special Education Services pursuant to the *Individuals With Disabilities Education Act* ("IDEA").

14. He was placed in a class room with students who all have similar cognitive deficits, limited help skills and with similar intensive needs. This environment is called a "Self-Contained Classroom" which includes a classroom, a bathroom, and a cleaning area. This group of severely disabled children, including and especially L.H. requires sufficient numbers of staff for the environment.

15. Moreover, Staff need to be experienced in serving the needs of such children. Additionally they need to be trained in the general needs of the students in the environment and in addition, the unique and individualized needs of each child. That is because each child requires their own accommodation plan to access the public education each are promised by federal and state law. One accommodation for L.H. was that he receive extra supervision when moving from one program or environment to another. Things went relatively well for L.H. during the 2022- 2023 School Year. During this period there were not only sufficient number of staff to address his unique needs and were trained in assuring his accommodations were provided. Sadly, things changed that summer.

D. THE SUMMER OF 2023

16. In the Summer of 2023 L.H. was eligible to participate in a specialized summer school program called *Extended School Year* ("ESY") so as to assure the skills he learned during the previous school year were not eroded, or lost over a long summer vacation, but maintained. This program was an important accommodation for L.H.

17. Accordingly this summer program, like those during the regular school year, also requires sufficient numbers of staff, and again that each be trained in the unique needs of each child like L.H., Ciera Mathis was his classroom teacher. She normally worked in a different school and was only at the this campus for the summer. She was not familiar with L.H. and was not qualified to work with children with disabilities like his.

18. While the 2022 ESY program went well, L.H.'s parents observed early that he did not like going to summer school. Later it became and obvious as to why- he was bring abused. He started to come home with bruises on his body.

19. On or about June 22, 2023, L.H. and other students were moving from recess to the classroom. As the students were doing so, the teacher, Ciera Mathis, allowed other students in the group to go to the water fountain but not L.H. She was with only one Aide, and the rest of the group all walked away and left him L.H. alone. As a result, L.H. started to cry. A video shows Mathis in obvious frustration who approached him, knelt down and then 'got in his face." L.H., tried to cover his face and ears with his hands. It is obvious he was trying protect himself from Mathis, likely because she had injured him in the past. Mathis removed L.H.'s hands from his face and forcefully slapped him with an open hand across his face and head. L.H. lost his balance and was crying uncontrollably.

20. Another teacher came to check on the commotion. Even so, this teacher did not report this incident to the Administrative Staff. Nor did any other Staff from the class. Nor did any Staff person who was in the hallway at that time. Nor did anyone report the incident to L.H.'s family. No one reported there incident to Child Protective Services.

21. After the incident, L.H. stayed with his father for the weekend. On numerous occasions,

during that period he would point to his head and mumble "head" his way of saying his head hurt. The School District did not inform L.H.'s family about the incident that took place at school, until Mr. Hessel picked L.H. up from school on June 26, 2023. The family was informed that the incident was recorded on video but were not permitted to see it.

22. The case was finally reported to Child Protective Services ("CPS") on June 27, 2023, days after the incident and many days after it should have been reported pursuant to state law and the School Board policies and procedures. CPS determined that L.H. experienced substantial harm.

23. Since the incident, L.H. has become increasingly prone to extreme meltdowns. Additionally, he has developed new behaviors after the incident, including timidness and anxious behavior around others. At night, he also consistently struggles to fall asleep.

## VII. STATE ACTION

24. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth. In addition, each sentence and paragraph below, likewise incorporates by reference as if fully set forth herein, the one above it.

25. Here the School District was at all times and in all matters acting under color of state and federal law when the Student L.H. was subjected to the acts, omissions, wrongs and injuries set forth herein.

## VII. CLAIMS PURSUANT TO THE U.S. CONSTITUTION

A. L.H. HAS CONSTITUTIONAL RIGHTS AT SCHOOL

26. Plaintiffs contend that the acts and omissions of the School Board and School District Staff violated the rights of L.H. to his physical privacy and life, liberty and the pursuit of

happiness, as contemplated by the Fourteenth Amendment of the United States Constitution. In addition, L.H. has a cognizable property right in his education pursuant to the Constitutions of the United States and Texas. L.H. thereby seeks recovery for damages pursuant to 42 U.S.C. §1983.

B. CLAIMS RELATED TO THE 4TH AMENDMENT TO THE US CONSTITUTION

1. Against The School District

27. Plaintiffs contend that the acts and omissions of School District Staff violated the rights of the Student pursuant to the Fourth Amendment of the Constitution of the United States for which they seek recovery pursuant to 42 U.S.C. §1983. Specifically, that the restraints were unnecessary and in addition and in the alternative, that the restraints were excessive. This claim is affixed against the School District Defendant.

2. Against Mathis, Individually

28. In additionally, L.H. also alleges that Defendant Mathis, in her Individual Capacity used L.H. excessive force and in addition and in the alternative, unnecessary force in restraining him, thus violating his rights under the 4th Amendment for which he seeks recovery pursuant to 42 U.S.C. §1983.

C. CLAIMS RELATED TO THE 14TH AMENDMENT TO THE U.S. CONSTITUTION

1. State Created Danger Claim

29. Plaintiffs asserts that the School Board failed to sufficiently fund their Special Education Department, such that there were not sufficient number of Staff in the self-contained classroom to keep L.H. safe, thereby violating his rights pursuant to the Fourteenth Amendment of the Constitution of the United States, for which he seeks recovery pursuant

to 42 U.S.C. §1983.

2 Due Process Claims

30. Plaintiffs asserts that the School Board failed to sufficiently supervise Staff so as to assure persons with sufficient experience were hired to work in the self-contained classroom. This failure violated L.H.'s rights pursuant to the Fourteenth Amendment of the Constitution of the United States, for which he seeks recovery pursuant to 42 U.S.C. §1983.

31. In addition, Plaintiffs contends that School Board failed to hire sufficient numbers of staff to work in the self-contained classroom. This failure violated L.H.'s rights pursuant to the Fourteenth Amendment of the Constitution of the United States, for which he seeks recovery pursuant to 42 U.S.C. §1983.

32. In addition, Plaintiffs contends that School Board failed to sufficient train staff who would work in the self-contained classroom. This failure violated L.H.'s rights pursuant to the Fourteenth Amendment of the Constitution of the United States, for which he seeks recovery pursuant to 42 U.S.C. §1983.

33. Such failures by the School Board were a moving force in violating the rights of L.H. as contemplated by Due Process Clause of the Fourteenth Amendment of the Constitution of the United States, for which she seeks recovery pursuant to 42 U.S.C. §1983.

3 Equal Protection Claim

34. Such failures by the School Board were a moving force in violating the rights of L.H. as a class of one, as contemplated by the *Equal Protection Clause* of the Fourteenth Amendment of the Constitution for which he seeks recovery pursuant to 42 U.S.C. §1983.

4. Against Mathis

35. It is also alleged that Defendant Mathis her Individual Capacity is likewise responsible for violating L.H.'s rights to *Due Process* under the 14th Amendment for which he seeks recovery pursuant to 42 U.S.C. §1983.

## VIII. VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT OF 1973

36. The School District receives federal funds and thus must follow the requisites of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 ("Section 504"). The implementing regulations of Section 504 require that each state that receives disbursements, including the state's political subdivisions such as local school districts, must ensure all students with disabilities are given appropriate and necessary accommodations, pursuant to federal law and rules. To the degree that a policy or practice hinders honest consideration of a disabled student's unique and individualized needs, and fails to accommodate that child's disability and keep the student safe, it violates Section 504.

A. FAILURE TO KEEP SAFE CLAIM

37. In addition and in alternative to the above, the Student asserts that the School District failed to provide him a safe and non-hostile educational environment, and as such he is a victim of discrimination based upon disability pursuant to Section 504.

B. DISPARATE TREATMENT CLAIM

38. Also, in addition and in alternative to the above, the Student asserts he has a plausible"Disparate Treatment Claim" pursuant to the Rehabilitation Act.

C FAILURE TO ACCOMMODATE CLAIM

39. Likewise, and also in alternative to the above, the Student asserts he has a plausible"failure to accommodate claim" pursuant to the Rehabilitation Act and similar to the ADA claim

noted below.

## IX. CLAIMS RELATED TO THE AMERICANS WITH DISABILITIES ACT

40. In addition, and in the alternative to the above, the facts as previously described demonstrate violations of the Americans with Disabilities Act, 42 U.S.C. §12131, et seq ("ADA").

41. Specifically, and separate and apart from her Section 504 cause of action, the Student alleges that the School District failed and refused to reasonably accommodate and modify services he needed due to his disabilities in violation of Title II of the ADA. Likewise, and as such, was a victim of discrimination based upon disability by the School District.

## X. RATIFICATION AND RESPONDEAT SUPERIOR

42. The Houston Independent School District Board of Directors ratified the acts, omissions and customs of School District personnel and staff.

43. Additionally, the School District is responsible for the acts and omissions of School District Staff Members who injured L.H. pursuant to the theory of *Respondeat Superior*.

## XI. DAMAGES

44. As a direct and proximate result of the Defendant's conduct, L.H. has suffered injuries and damages, for which she and her parent are entitled to recover including but not limited to:

a. Loss of equal access to educational opportunities;

b. Nominal damages;

c. Consequential damages;

d. Physical pain in the past;

e. Mental anguish in the past;

f. Mental anguish in the future;

g. Mental health costs in the past;

h. Mental health costs in the future;

i. Medical expenses in the past; and

45. Reimbursement of past and future out-of-pocket expenses incurred by the family of L.H. but for the acts and omissions of the Defendant.

## XII. SPOLIATION

46. Plaintiffs hereby requires and demands that the School District preserve and maintain all evidence pertaining to any claim or defense related to violations, causes of action, facts, and resulting damages set forth herein and/or made the basis of this petition and request for due process, including, but not limited to, statements, photographs, videotapes, audiotapes, surveillance, security tapes, business or medical records, incident reports, telephone records, emails, text messages, electronic data/information, and any other evidence, potential evidence, or potentially discoverable documents.

47. Failure to maintain such items will constitute "spoliation" of evidence, which will necessitate use of the spoliation interference rule—an inference or presumption that any negligent or intentional destruction of evidence was done because the evidence was unfavorable to the spoliator's case.

## XIII. DEMAND FOR JURY TRIAL

48. Pursuant to Federal Rules Of Civil Procedures 38(b), Plaintiffs request a jury trial.

## PRAYER

Plaintiffs further prays for judgment against the School District and Mathis in the manner and particulars noted above, and in an amount sufficient to fully compensate L.H. and his parents

for the elements of injuries enumerated herein, pursuant to the United States Constitution, Section 504 of the Rehabilitation Act of 1973, Americans With Disabilities Act and state law, and for such other and further relief as the Court may deem just and proper in law, equity, or both.

Respectfully submitted,

Martin J. Cirkiel, Esq.
Texas Bar No.: 00783829
Fed. ID No.: 21488
Cirkiel Law Group, P.C.
1005 West 41st Street Suite 201
Austin, Texas 78756
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]
marty@cirkielaw.com [Email]

REPRESENTATIVES FOR PLAINTIFFS